The case was as follows; Sally Leary was the owner of the slaves in question, and, being about to intermarry with Thomas J. Charlton, by an indenture to which she, the intended husband, and the present defendant were parties, she conveyed the slaves by way of marriage settlement to the defendant as a trustee, upon several trusts, amongst others, upon trust, after the marriage, for the intended husband during his life, and after his death for the wife, the children of the marriage, and other persons. The marriage took place in March, 1827, and the deed was proved in June following, but was not registered until 22 March, 1830. From the marriage up to 19 July, 1837, Mr. Charlton had the possession and profits of the slaves, with the consent of the defendant. On that day he contracted to sell to the defendant, Leary, all his interest in the slaves, at the price of $400. Both of those parties, under the advice of counsel, then believed Charlton's interest to be only an estate for his life, and the price agreed on was the full value of such an estate. Counsel then prepared and Charlton executed a bill of sale, conveying "all his rights, title and interest in and to the slaves," describing them (374) by name and as being the same negroes which were settled upon the marriage. Leary paid Charlton the said sum of $400, and it was applied towards the payment of Charlton's debts.
At the time of the sale the whole value of the slaves in absolute property for $4,000, and Charlton was then insolvent and sued by the Bank of the State of North Carolina and the Bank of Cape Fear, as surety for insolvent principals, to the amount of $25,000. In August, 1837, *Page 298 
judgment were rendered in those suits and executions issued, under which these negroes were sold and purchased by the plaintiff. Mr. Charlton is still living. His Honor instructed the jury that if Leary intended bonafide to buy a life estate in the negroes and Charlton intended to convey a life estate only, as the price was a full consideration for such an estate, the conveyance was good against Charlton's creditors, although the deed, in law, conveyed the absolute and entire interest. There was a verdict and judgment for the defendant and the plaintiff appealed.
It seems to us that the correctness of the instructions cannot be questioned. The plaintiff contended that the settlement was void for want of due registration; so that, as to his creditors, the legal estate vested in the husband, jure mariti. Now, admitting that to be so, then Charlton contracted to sell to the defendant an estate for life, and this contract is found to be on a fair price, and bona fide, and thus far there is no fraud and Charlton's creditors would be bound, as well as himself. But, it is said that Leary took a bill of sale for the entire estate, and that
conveyance must be deemed fraudulent. It is granted that there would be a presumption against it if we were not otherwise informed what the parties contracted for, and why they so contracted. Matter dehors the deed may be resorted to for the purpose of repelling, as well as founding, an imputation of fraud. When we learn the whole truth in (375) this case the presumption from the form of the bill of sale is rebutted. Had it been known that Charlton had the absolute estate, the deed would doubtless have been expressed in terms more restricted and suited to pass the life estate only. But the mistake as to the extent of his interest caused also the mistake in drawing the bill of sale, in which general terms are used instead of such as would accurately describe the interest the one party intended to part from and the other expected to get, by that instrument. It was clearly a mistake, and nothing more. It cannot be turned into a fraud and thus avoid the contract altogether. The title is good for the life of Charlton at the least, and that is a sufficient answer to this action. How the conveyance might be treated in another jurisdiction, or how it might be treated at law if set up after the death of Charlton are not questions proper to be now considered. Our duty is to say that in the present state of things the judgment must be affirmed.
PER CURIAM. Judgment affirmed. *Page 299